**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL W.<br><br>*Plaintiff,*<br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>*Defendant.* | Civil Action No. 20-8341<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Michael W.'s[1] ("Plaintiff") request for review of Administrative Law Judge Peter R. Lee's ("Judge Lee" or the "ALJ") decision regarding Plaintiff's application for Disability Insurance Benefits ("DIB"), pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. § 1381.  For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED**.

I.  **STANDARD OF REVIEW AND APPLICABLE LAW**

   A.  **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  The Commissioner's application of legal precepts is subject to plenary review, but her factual findings must be affirmed if they are supported by substantial evidence.  Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)

---

[1] Pursuant to Standing Order 2021-10, the Court will refer only to Plaintiff by his first name and last initial.

1

(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (explaining that substantial evidence is "less than a preponderance").

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the [Plaintiff] and corroborated by family and neighbors; and (4) the [Plaintiff's] educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. App'x 167 (3d Cir. 2014).

**B. The Five-Step Disability Test**

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 416.920. First, the Commissioner must determine whether the claimant is currently engaging in "substantial

2

gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503.

Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. See id.

At the third step, the Commissioner must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404 Subpart P Appendix 1 (the "Listings"). 20 C.F.R. § 416.920(d). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the analysis proceeds.

Prior to the fourth step, the Commissioner must determine the claimant's residual functional capacity ("RFC") to perform work activities despite the limitations from the claimant's impairments. 20 C.F.R. §§ 416.920(e), 416.945. In considering a claimant's RFC, the Commissioner must consider "all the relevant medical and other evidence" in the claimant's record. 20 C.F.R. § 416.920(e). Then, at step four, the Commissioner must decide if the claimant has the RFC to perform his past relevant work. 20 C.F.R. § 416.920(f). If so, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3).

Finally, at the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [her] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II. BACKGROUND

### A. General Background

Plaintiff applied for DIB in 2014, when he was 39 years old. Administrative Transcript ("Tr.") 64, ECF No. 8. Plaintiff alleged disability due to major joint dysfunction in his right shoulder, degenerative disc disease, and obesity. Tr. 1237. Plaintiff has a high school education and attended vocational school for two years. Tr. 1296-97; 35. Plaintiff has past work experience as a driver, machine operator, laborer, and truck driver. Tr. 1296-97.

In a Function Report dated November 8, 2014, Plaintiff reported that he lived in a dwelling unit with his wife. Tr. 195. He stated that on a typical day, his father would come over and supervise him as he showered, watched television, read the newspaper, and went on a brief walk. Tr. 195, 199. He reported that about once a day, he made a simple meal. Tr. 197. He was unable to engage in any household chores as a result of pain and his lack of balance. Id. He stated that he could not go out alone due to trouble walking, problems with balance, and his inability to drive due to being on medication. Tr. 197-98. Plaintiff also stated that he could pay bills and handle money and enjoyed reading and playing cards and board games. Tr. 198.[2]

---

[2] The Parties have summarized the medical evidence in their respective briefs. See Pl. Mem., ECF No. 13; Def. Mem. at 3-7, ECF No. 14. The Court will address medical evidence only where necessary to the adjudication of Plaintiff's claim in Section III, infra.

B. **Procedural History**

Plaintiff filed an application for DIB on October 21, 2014, alleging that he became disabled on August 14, 2014. Tr. 154-55. The Social Security Administration denied his application initially and again after a request for reconsideration. Tr. 90-95, 98-100. After a hearing before Judge Lee, the ALJ denied Plaintiff's application for DIB on the grounds that Plaintiff could perform other work at step five of the sequential evaluation. Tr. 15-30. Plaintiff appealed to the Appeals Council, which found no grounds for review. Tr. 1-5. Plaintiff subsequently filed suit in this Court, and on March 21, 2019, Judge Linares issued an Opinion and Order remanding this matter to the Commissioner for failing to meaningfully consider Plaintiff's obesity in combination with Plaintiff's other impairments at the step three medical equivalence discussion, in the RFC, or the subsequent step four and step five analyses. Tr. 1327-31.

On remand, Judge Lee conducted hearings on October 9, 2019 and February 6, 2020 and again concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 1196-1219. This Action followed.

C. **ALJ Decision**

The ALJ determined that Plaintiff was not disabled under the five-step framework. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since August 14, 2014. Tr. 1202. At step two, the ALJ determined that Plaintiff's right shoulder impingement, status post torn labrum and rotator cuff of the right shoulder, degenerative disc disease, and obesity qualified as severe impairments. Id. The ALJ also noted that the record referenced Plaintiff's hypertension, but found that based on the objective medical evidence and scant reference to meaningful ongoing symptoms, the condition was non-severe. Id. At step three, the ALJ found

that none of Plaintiff's impairments, individually or collectively, met or medically equaled the criteria of a listed impairment. Tr. 1202-03.

    Before moving on to step four, the ALJ found Plaintiff's RFC to be as follows:

> [T]he [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he: can sit for up to six hours in an eight-hour workday, with an option to stand or change position; can stand and/or walk for two hours in an eight-hour workday; can never climb ropes, ladders, or scaffolds; can never be exposed to unprotected heights or hazardous machinery; can occasionally climb stairs and ramps; can never crawl; can occasionally kneel; can occasionally stoop and crouch; can occasionally reach overhead and frequently reach in all other directions; and can occasionally balance.

Tr. 1203. In reaching this determination, the ALJ evaluated the totality of the evidence in the record, including objective medical reports, medical opinion evidence, the Plaintiff's testimony, and a third-party function report from Plaintiff's wife. Tr. 1203-09. The ALJ concluded that while Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, his testimony regarding the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence in the record. Tr. 1209. Despite Plaintiff's testimony and the evidence supporting his physical limitations, the ALJ concluded that the Plaintiff was not precluded from performing all work. Id.

    At step four, the ALJ found that Plaintiff is unable to perform past relevant work. Id. At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. Tr. 1210. The ALJ reached this conclusion with the assistance of a vocational expert ("VE") who evaluated Plaintiff's age, education, work experience, and RFC. Id. Given Plaintiff's classification as a younger individual with at least a high school education who can speak English, along with the limitation of unskilled sedentary work, the VE determined that the jobs available to the Plaintiff included document preparer,

addresser, and surveillance system monitor. Id. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act from August 14, 2014 through the date of his decision. Tr. 1211.

### III. ANALYSIS

Plaintiff asserts that the ALJ's ruling was erroneous in two ways. First, he argues that the ALJ's step three analysis did not properly consider the combined effect of each of Plaintiff's impairments, including Plaintiff's obesity, with one or more of the Listings. Second, Plaintiff contends that the ALJ's RFC determination, including his conclusions regarding Plaintiff's pain, was not based on substantial evidence. The Court disagrees and addresses each argument in turn.

#### A. Step Three Analysis

As outlined above, if a claimant has "more than one impairment, and none of them meets or equals a listed impairment," an ALJ must "review the symptoms, signs and laboratory findings about [the] impairments to determine whether the combination . . . is medically equal to any listed impairment." CFR 404.1526(a) (emphasis added). The ALJ must also set forth the reasons for his decisions, Burnett v. Comm'r of Soc. Sec. Admin., F.3d 112, 119 (3d Cir. 2000), including a "discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review." Diaz v. Comm'r of Soc. Sec., 557 F.3d 500, 504 (3d Cir. 2009). However, an ALJ need not "use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F. 3d at 505.

Plaintiff unpersuasively argues that the ALJ's step three combination analysis consisted of bare conclusory statements and did not provide an opportunity for meaningful review. Pl. Mem. at 10-11. The ALJ provided a brief discussion of his step three analysis, finding:

> [T]he medical evidence of record does not show conditions of the nature, severity or duration contemplated by listings 1.02 and 1.04. Further, although there is no specific listing for obesity, its impact, both individually and in combination with the claimant's other

> impairments, has nonetheless been considered pursuant to SSR 19-2p. However, there is no substantial evidence that the claimant's obesity itself equals, or increases the severity of the claimant's other impairments to the point of meeting or equaling the requirement of any medical listings, including 1.02 and 1.04.

Tr. 1202-03. However, the ALJ then proceeded to thoroughly discuss the combined effect of Plaintiff's impairments as part of the RFC analysis. For example, the ALJ stated:

> The medical evidence of record shows that the claimant suffers from physical impairments, including multiple orthopedic conditions and obesity, which could reasonably be expected to interfere with his abilities to do more than relatively minor lifting or carrying or to engage in prolonged standing or walking, as well as a need to change positions periodically for comfort.

Tr. 1204. While Plaintiff focuses merely on the ALJ's analysis under the heading of step three, the Third Circuit has stressed that the decision must be "read as a whole." Jones, 364 F.3d at 505; see also Rivera v. Comm'r of Soc. Sec., 164 F. App'x 260, 263 (3d Cir. 2006) (finding ALJ's conclusory statement in step three was harmless where, "in reviewing the voluminous medical evidence available to us, we found abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence"); Stephanie L. v. Kijakazi, No. 19-20360, 2021 WL 4704976, at *32-33 (D.N.J. Oct. 8, 2021) (upholding a brief step three analysis where the ALJ fully analyzed the claimant's impairments at step four).

In this case, the ALJ's decision, read as a whole, demonstrates that the ALJ considered the appropriate factors in concluding that Plaintiff did not meet the requirements for any Listing. The ALJ's opinion discusses how Plaintiff's back and shoulder impairments, along with his symptoms of pain, impacted his range of motion and physical abilities. Tr. 1207-08. The ALJ explicitly stated which Listings he considered, and why Plaintiff's impairments did not meet the criteria. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 93 (3d Cir.2007) (upholding an ALJ's step three analysis where "the ALJ issued the step three finding only after reviewing all of the objective

medical evidence . . . and explicitly stating which Listings he was considering"). Accordingly, the Court finds that the ALJ sufficiently explained his findings to provide meaningful review of the step three determination.

The Court further disagrees with Plaintiff's characterization of the ALJ's decision as lacking meaningful discussion of Plaintiff's obesity. The Third Circuit has held that "an ALJ must meaningfully consider the effects of a claimant's obesity, individually and in combination with her impairments on her workplace function at step three and at every subsequent step." Diaz, 577 F.3d at 504. While the ALJ included only a brief conclusory statement at the step three analysis about Plaintiff's obesity, he dedicated nearly half a page of discussion to the topic in his RFC analysis, recalling Plaintiff's gastric bypass surgery and his Body Mass Index, and noting Plaintiff's testimony that "his obesity affects all aspects of his life." Tr. 1207. The ALJ then concluded that "[i]t would be reasonable to expect that the claimant's obesity contributes to and magnifies the pain and limitations of movement and activity the claimant experiences from his orthopedic conditions." Id.

Such analysis constitutes meaningful consideration of Plaintiff's obesity as required by Diaz. Moreover, Plaintiff does not proffer any evidence to show that even if the ALJ did not fully consider his obesity, how that condition exacerbates his other conditions such that he would otherwise meet one of the Listings criteria. Rutherford, 399 F.3d at 553 (holding that a remand is not required where obesity was not adequately considered but "it would not affect the outcome of the case"). The Court therefore finds that the ALJ's step three analysis was supported by substantial evidence and is upheld.

9

### B. The ALJ's RFC Determination

An RFC should account for the most activity that a plaintiff can perform despite her limitations. 20 C.F.R. § 416.945(a). The ALJ is ultimately responsible for making an RFC determination based on the medical evidence, and must "include a narrative discussion describing how the evidence supports each conclusion." Harris v. Comm'r of Soc. Sec., No. 09-3219, 2010 WL 2874352, at *6 (D.N.J. July 19, 2010) (citing Social Security Ruling 96-8p). An ALJ's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020). Moreover, Plaintiff has the burden to demonstrate how any alleged error "could have affected the outcome of [her] disability claim." See Holloman v. Comm'r Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2016) (citation and quotation marks omitted).

Here, the ALJ supported his RFC determination with a detailed narrative discussion of the available medical and nonmedical evidence, ultimately concluding that Plaintiff had the RFC to perform sedentary work, with certain additional restrictions. Tr. 1203. The ALJ considered Plaintiff's subjective testimony of his symptoms but concluded that his accounts of the intensity, persistence, and limiting effects of his conditions were inconsistent with the evidence in the record. Tr. 1206-09. As to his physical impairments, for example, the ALJ found that while medical records and Plaintiff's subjective testimony showed ongoing complaints of musculoskeletal impairments and pain, his medical evaluations showed unremarkable diagnostic tests. Tr. 1209. Specifically, Plaintiff's doctors' reports showed normal gait, strength, muscle tone, and range of motion, and a medical report as recent as January 2020 noted "essentially benign findings, including no spasm, full range of motion with no restrictions . . . ." Tr. 1207, 1933-36. Critically, the ALJ found that "the record since the alleged onset date overall reflects moderate clinical

findings and simply does not establish physiological abnormalities which would limit the claimant's daily activities to the profound degree alleged or preclude the claimant from performing at the residual functional capacity as assessed above." Tr. 1209.

Viewing the ALJ's decision and record as a whole, the Court concludes that there is substantial evidence to support the ALJ's RFC determination. Plaintiff's arguments to the contrary are unavailing.

First, Plaintiff contends that the ALJ did not adequately consider Plaintiff's evidence of pain. Pl. Mem. at 19-23. However, the ALJ explicitly considered records of ongoing issues with Plaintiff's chronic pain, but ultimately found that the record overall reflected mostly moderate clinical findings and routine management, without any substantial evidence of profound physiologic deficits to suggest significant limitations with even modest physical activities." Tr. 1206. To support this finding, the ALJ considered Plaintiff's claims that his shoulder and neck pain prevented his ability to perform sedentary work with limited overhead reaching, but emphasized that Plaintiff's shoulder condition improved after his surgery in 2012 and that his doctor recommended only avoiding heavy lifting after Plaintiff's recent complaints of shoulder pain. Tr. 1204-05. The ALJ also expressly considered Plaintiff's treatments for back pain, but noted that Plaintiff's medical records indicated some improvement after treatment and reflected only moderate findings that did not establish the level of impairment Plaintiff claimed. Tr. 1206. Plaintiff's assertion that the ALJ's RFC is not supported by substantial evidence thus lacks merit.

Next, Plaintiff maintains that the ALJ improperly weighed the opinion testimony in the record. Pl. Mem. at 32-34. The ALJ gave only limited weight to assessments by Drs. Garfinkel and Patti, finding that they described Plaintiff's disabilities in terms of conclusory phrases and were "vague" and "lacking specific function-by-function assessments," and that it was unclear

11

whether they were simply meaning to convey that Plaintiff was unable to perform his strenuous past work as a forklift driver. Tr. 1208. The ALJ also gave little weight to the opinion of the treating physician for Plaintiff's pain, finding that the opinion suggested a higher degree of restriction than supported by the substantial evidence in the record and that it was rendered only months after Plaintiff's 2014 surgery and was not reflective of Plaintiff's overall functioning throughout the vast majority of the relevant period. Tr. 1208. While the ALJ did not wholly adopt any single opinion, he appropriately weighed the opinions in the record to arrive at an RFC that was slightly less restrictive than the RFC recommended by the treating physicians and that adjusted for Plaintiff's own testimony about his ability to complete daily activities.[3] Tr. 1207-08. The Court discerns no legal error in the ALJ's balancing of opinions and declines to reweigh them on appeal. See Thomas v. Comm'r of Soc. Sec., No. 19-13990, 2021 WL 870745, at *10-11 (D.N.J. Mar. 8, 2021) (quoting Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) ("Courts are bound by the ALJ's findings of fact that are supported by substantial evidence 'even if [it] would have decided the factual inquiry differently.'")).

Consequently, the ALJ supported his RFC determination with substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED**.

Date: April 7, 2022

/s/ Madeline Cox Arleo
**Hon. Madeline Cox Arleo**
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff additionally asserts that the ALJ erred by giving weight to the Plaintiff's ability to perform daily tasks. Pl. Mem. at 37. Such a position is unsupported by law. See, e.g., Grogan v. Comm'r of Soc. Sec., 459 F. App'x 132, 138 (3d Cir. 2013) (finding that an ALJ's denial of disability benefits was supported by the claimant's ability to perform daily activities "such as making simple meals, caring for her children, paying bills, and light cleaning"); Cruz v. Colvin, No. 15-1639, 2016 WL 1091347, at *36 (D.N.J. Mar. 21, 2016) (finding that a claimant's ability to "care for herself, engage in leisure activities, manage her health and personal care needs, and use community resources" counted as relevant evidence supporting an ALJ's decision to deny disability benefits).